IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| George Katakis, | Case No. 3:07 CV 591 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Commissioner of Social Security, | |
| Defendant. | |

Plaintiff George Katakis filed a Complaint (Doc. No. 1) against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny disability insurance benefits (DIB). Plaintiff requested judicial review pursuant to 42 U.S.C. § 405(g).[1] The Commissioner's Appeals Council notified Plaintiff by letter dated December 29, 2006 that his administrative appeal was denied and that he must file for judicial review by February 29, 2007. Plaintiff, who resides in this District, timely filed this Complaint on February 27, 2007.

The case was referred to United States Magistrate Judge Vernelis Armstrong for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). Following briefs on the merits from both parties,

---

[1] This Court has jurisdiction under 42 U.S.C. § 405(g): "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides . . . .".

the Magistrate filed a Report (Doc. No. 17) recommending that the Court affirm the Commissioner's decision to deny Plaintiff's claim for DIB.

This matter is before the Court on Plaintiff's Objection to the Report and Recommendation (Doc. No. 18), to which Defendant has responded (Doc. No. 19). In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) and (C), this Court has made a *de novo* determination of the Magistrate's findings. The Court adopts the procedural and factual background set forth in the Report and Recommendation (pp. 1-5). The Court further adopts the Magistrate's conclusion to deny Plaintiff's claim.

## BACKGROUND

Plaintiff filed an application for DIB alleging he has been disabled since June 18, 2001. Plaintiff worked in heavy construction from 1964 to June, 2001, when he suffered a ripped rotary cuff in his right shoulder. He also suffered from displaced discs in his back and neck as well as carpel tunnel syndrome in both hands. After reviewing the medical evidence in the record, which is described in detail in the Report and Recommendation (pp. 6-11), the Administrative Law Judge (ALJ) determined Plaintiff was not disabled under the Social Security regulations as of December 21, 2001, the date of eligibility.

The Magistrate reviewed the record and found the ALJ's findings were supported by substantial evidence. Plaintiff has objected and argues the Magistrate should have engaged in the full five-step analysis (she ended her analysis at Step Three because she determined the conclusion at that stage rendered the rest of the analysis moot). In Steps Four and Five of the sequential analysis, the ALJ improperly rejected evidence that supports limiting Plaintiff to a narrow range of work and did not cite any medical evidence to support the conclusion that Plaintiff could perform "light work." In

2

short, Plaintiff claims the Report and Recommendation is insufficient because it did not engage in a complete analysis as required by the governing regulations, and further that the ALJ did not properly consider certain evidence in reaching his conclusions.

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Comm'r of Soc. Sec.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (*citing* 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

"Under the Social Security Act, 42 U.S.C. § 423(a), an individual is entitled to disability insurance benefit payments if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability." *Walters v. Comm'r, of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (*citing* 42 U.S.C. § 423(d)(1)(A)). The first three criteria are not in dispute.

3

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ." *Id*. at 529. In addition, "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* (*citing* 42 U.S.C. § 423(d)(2)).

A five-step sequential analysis determines whether a person is disabled. *Id.*; 20 C.F.R. § 404.1520. This analysis may be summarized as follows:

1. Was claimant engaged in a substantial gainful activity (SGA)?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the Listed impairments?

4. Determine the claimant's residual functional capacity and whether claimant can perform past relevant work.

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Only if a claimant satisfies each element of the analysis, including the inability to do other work and meets the duration requirement, is he determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five, in determining whether the claimant has the residual functional capacity to perform available work in

the national economy. *Id.*; *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987) ("[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy. But the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step.") The Court considers claimant's residual functional capacity, age, education, and past work experience, to determine if claimant could perform other work. *Walters*, 127 F.3d at 529. The residual functional capacity, determined at Step Four, is used in Step Four, to assess if the claimant can perform past relevant work and, at Step Five, to determine whether claimant can adjust to other work. 20 C.F.R. § 404.1520(e); *see also Bowen*, 482 U.S. at 146 n. 5 (1987). The Commissioner may meet the burden at Step Five with testimony of a vocational expert that supports the ALJ's findings, and is based on a hypothetical question which accurately reflects the claimant's impairments. *Varley v. Sec'y of Health and Human Svcs.*, 820 F.2d 777, 779 (6th Cir. 1987).

## DISCUSSION

Plaintiff George Katakis meets the first three criteria for eligibility: (1) He was insured for disability benefits until December 31, 2001 (Tr. 20); (2) he had not attained retirement age; and (3) he filed an application for DIB in July 2002 (Tr. 96-98). However, the ALJ found that Plaintiff was not disabled through December 31, 2001, the last date insured (Tr. 26). In reviewing the ALJ's determination that Plaintiff was not disabled, the Court moves to the five-step sequential analysis.

### 1. Substantial Gainful Activity (SGA)

The ALJ found that Plaintiff met Step One because he was not engaged in a SGA from June 2001 until December 2001 (Tr. 20). Although the Magistrate concluded that Plaintiff failed to carry

5

his burden at Step One (R & R p. 18), the Court agrees with the ALJ and Defendant (Defendant's Response p. 4) that Plaintiff did meet Step One.

### 2. Severity of Impairments

Under Step Two, the ALJ found, and there is no dispute, that Plaintiff had severe impairments of the back and shoulders (Tr. 19-20). Plaintiff's heart condition, hypertension, and symptoms of pain were not found to be severe. Therefore, Plaintiff's shoulder condition imposed a substantial limitation on his basic work activities.

### 3. Listed Impairment

The ALJ concluded that the severe impairments of the back and shoulder did not meet a Listing under Step 3, 20 C.F.R. pt. 404, subpt. P, app.1, because they did not cause "pseudoclaudication, spinal arachnoiditis, nor did they result in an inability to ambulate effectively, and therefore they do not meet any medical listing evaluated under 1:00 (Musculoskeletal conditions)." (Tr. 22). For example, spinal stenosis, a Listed Condition, was not shown:

> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1, Listing 1.04.

Plaintiff must show that he meets all the elements of the Listing. *See Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986) ("almost" establishing disability is insufficient); *Hale v. Sec'y of Health and Human Svcs.*, 816 F.2d 1078, 1082 (6th Cir. 1987) ("[L]ack of evidence indicating the existence of all the requirements of [an appendix listing] provides substantial evidence to support the Secretary's finding that the claimant did not meet the Listing.").

6

Here, Dr. Lawrence noted that the results of an MRI on May 17, 2001, showed "no evidence of claudicating disease in his spine, including no spinal stenosis." Dr. Lawrence did not "feel comfortable with the concept of doing surgery on the minor disc change at L5-S1" (Tr. 179).

Nor did Plaintiff present evidence of pseudoclaudication with a general spinal examination.

The Code of Federal Regulations provides guidance on spinal examinations:

> Examination of the spine should include a detailed description of gait, range of motion of the spine given quantitatively in degrees from the vertical position (zero degrees) or, for straight-leg raising from the sitting and supine position (zero degrees), any other appropriate tension signs, motor and sensory abnormalities, muscle spasm, when present, and deep tendon reflexes. Observations of the individual during the examination should be reported; e.g., how he or she gets on and off the examination table. Inability to walk on the heels or toes, to squat, or to arise from a squatting position, when appropriate, may be considered evidence of significant motor loss

20 C.F.R. pt. 404, subpt. P, app. 1 (Listings) § 1.00(E)(1).

The medical evidence offered lacks a detailed description of gait, range of motion of the spine, motor and sensory abnormalities, muscle spasm, and deep tendon reflexes. Both Dr. Lawrence's medical opinion, and the absence of other evidence, show that Plaintiff's spinal condition does not meet the medical criteria for spinal disorder. The ALJ's conclusion that Plaintiff did not meet a Listed Condition is supported by substantial evidence.

### 4. Residual Functional Capacity

Under Step Four, the impairments described above precluded Plaintiff from performing "past relevant work" (Tr. 25). However, the ALJ concluded that the claimant had the residual functional capacity to perform unskilled light exertional level work, "with an option to sit/stand as needed, but absent a requirement for climbing ladders, ropes, or scaffolds, and with only occasional overhead reaching with the upper extremities" (Tr. 22).

The issue is whether Plaintiff could perform light work from June 2001 to December 2001. Plaintiff argues that the ALJ rejected medical evidence, and failed to cite to any other medical evidence, that he could perform light work. Plaintiff also argues that objective medical findings relevant to the June to December 2001 time period, were not considered by the Magistrate (Plaintiff's Objection at p.4).

Light work is defined by the regulations:

(b)  Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

The ALJ  concluded (Tr. 22) that Plaintiff could perform light work:

[Plaintiff] had residual functional capacity to perform unskilled light exertional level work activity with an option to sit/stand as needed, but absent a requirement for climbing ladders, ropes, or scaffolds, and with only occasional overhead reaching with the upper extremities (occasional is defined as less than $1/3^{rd}$ of the workday).

The ALJ further "considered all symptoms and the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence " (Tr. 22) including the February 19, 2001 emergency room examination, for complaints of neck pain and difficulty focusing, which showed (Tr. 23):

full range of motion (ROM) in all extremities with no pedal edema, and negative bilateral straight leg raising. There was tenderness to palpation throughout the lumber spine with muscle spasm. Thoracic spine x-rays showed severe osteophytic spurring of the lower thoracic vertebra, but well maintained neural foramina. Lumber spine x-rays showed severe narrowing of the L5-S1 disc space with evidence of degenerative disc disease, but the neural foramina was well maintained.

8

Next, as noted earlier, Plaintiff had a neurological examination on May 17, 2001, by Dr. Lawrence, a neuro-surgeon. Plaintiff complained of neck, back, and leg pain (Tr. 23). The exam showed that Plaintiff had bilateral frozen shoulder syndrome, which was greater in the right than the left, and was being treated conservatively. Plaintiff also complained of weakness and buzzing in legs, but reflexes were all present and straight leg raising was negative. An MRI scan showed L5-S1 total degenerative disease as the source of claimant's symptomatology, but there was no evidence of claudicating disease in the spine or spinal stenosis. While Dr. Lawrence "found some disc bulge or disc herniation associated with L5-S1 degeneration, this was not believed to be causing radiculopathy, as it was small." Dr. Lawrence noted that Plaintiff's condition had not "progressed to the point where surgical decompression would be best," as supported by an earlier April 21, 2001 thoracic spine MRI showing mild generative changes absent any large disc herniation or spinal stenosis (Tr. 24, 178-179).

The ALJ also cited Plaintiff's arthroscopic shoulder surgery on August 28, 2001 and follow-ups with Dr. Morse. After the surgery, shoulder pain lessened, then worsened. Plaintiff was not making progress toward improved motion due to adhesive capulitis. On April 12, 2002, Plaintiff underwent manipulation and an injection of Dep-Medrol. Plaintiff reported two weeks later that his shoulder "felt much better and ROM (range of motion) improved." (Tr. 24, 190). The ALJ found that the rest of the medical evidence (March 2003 and later) was "remote" to the June 18, 2001-December 31, 2001 time period (Tr. 24).

The ALJ also evaluated the claimant's credibility. The ALJ has the authority to evaluate a claimant's credibility, and the Court cannot re-evaluate its finding. *Besaw v. Sec'y of Health and Human Svcs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge

9

[his] subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). Nevertheless, if the ALJ finds that the statement is not credible or not wholly credible, he or she must "provide specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96 Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at *4 (July 2, 1996); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). The ALJ may evaluate the location, duration, frequency, and intensity of symptoms. *Rogers*, 486 F.3d at 247.

The ALJ determined Plaintiff's medically determinable impairments "could have been reasonably expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and the limiting effects of the symptoms are not entirely credible." Plaintiff's claim that "he needed to nap during the day depending on his back is not supported by or consistent with the medical evidence of record established during the relevant period" (Tr. 23) was not supported by medical evidence. The ALJ's decision to give less weight to Plaintiff's testimony is supported by the record.

Next, the ALJ reviewed the objective medical evidence. He found that Plaintiff's back condition did not preclude him from light unskilled work. Plaintiff did not undergo surgery for his 1992 remote back injury. The 2001 emergency room visit for back pain did not show objective leg weakness. Objective findings did reflect some disc bulge or herniation at the L5-S1 level "consistent with degeneration, but it was not causing radiculopathy," and this defect was found to be "relatively small" because of the absence of both spinal stenosis and neurological deficits. Again, Plaintiff's condition was not "amenable to surgery." The ALJ found that this condition would "preclude heavy

10

lifting/carrying and prolonged standing/walking consistent with the light exertional level acknowledged in the claimant's assigned residual functioning capacity," and that a sit/stand option would accommodate this condition (Tr. 24).

The ALJ's findings that Plaintiff had the residual work capacity to perform light work despite his back condition is supported by substantial evidence. Objective medical evidence shows no spinal stenosis. Other medical evidence discussed earlier also supports a residual functional capacity to perform light work. Finally, Plaintiff's degenerative back disease does not necessarily, by itself, establish an inability to perform light work. *See Essary v. Comm'r*, 114 F. App'x. 662, 667-668 (6th Cir. 2004) (degenerative disc disease of the lumbar spine does not preclude a finding that a claimant can perform light work).

The ALJ also found that Plaintiff's shoulder condition could be accommodated by light unskilled work conditions (Tr. 25). The ALJ acknowledged that Plaintiff's shoulder condition precluded him from "climbing and would limit overhead lifting to an occasional basis," but determined that pain relief medication prescribed for the condition would enable Plaintiff to work with accommodations. This finding too is supported by substantial evidence.

Next, Plaintiff claims that the ALJ determined he could "discredit" treating doctor's opinions post-December 31, 2001. However, the ALJ discussed medical opinions pre-June 2001, June to December 2001, *and* post-December 2001. The timing of the various opinions contributed to the *weight* that the ALJ gave them.

The ALJ concluded that opinions prior to June 2001 were entitled to less weight, because the Plaintiff was engaged in SGA as a light laborer. Plaintiff's activities as a light laborer demonstrated that his symptoms were not of such severity as to preclude performance of SGA (Tr. 24). By Plaintiff's own admissions, he worked as a light laborer into 2001 (Tr. 491, 545), but stopped working

11

in June 2001 when he tore his right shoulder rotary cuff (Tr. 479). Plaintiff alleges disability as of June 18, 2001 (Tr. 11) and it was proper for the ALJ to give less weight to symptoms before that date when Plaintiff admittedly was engaged in SGA.

Plaintiff claims the ALJ also improperly discredited Dr. Ragothaman's September 10, 2004 opinion. However, the ALJ did not reject this opinion, but gave it less weight (Tr. 24). The doctor opined that Plaintiff is limited to lifting less than 10 pounds and was "unable to do" many ordinary physical activities (Tr. 260). The ALJ explained that Dr. Ragothaman's "opinion made no distinction as to the period of treatment," and "does not indicate what objective evidence of record" the opinion relied on. The failure to relate this opinion back to a relevant date, and the absence of objective evidence, "substantially limits the weight of [Dr. Ragothaman's] opinion" (Tr. 24).

So long as the ALJ sets forth a reasoned basis for the rejection, the ALJ may "discredit" a physician's opinion not supported by objective medical evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Also, the ALJ is entitled to give more weight to an opinion with a better explanation, and less weight to an opinion with a weaker explanation. 20 C.F.R. § 404.1527(d)(3). Here, the ALJ did not "discredit" or "reject" the opinion, but, appropriately, gave it less weight. Although Plaintiff argues that Dr. Ragothaman's opinion relates back because the form stated that the opinion was based on findings with respect to medical history, clinical, and laboratory findings (Tr. 260), no evidence supports that the general phrase "medical history" refers only to, or even includes, June-December 2001. The Court cannot reasonably infer that this September 2004 opinion relates back specifically to June-December 2001. The ALJ properly considered this opinion in determining Plaintiff's residual functioning capacity and was entitled to give it less weight because of its limited relevance.

Finally, Plaintiff presents new evidence, a "detailed evaluation" from independent evaluator Dr. Barker. Plaintiff claims this evidence specifically relates back to the insured date (Tr. 465-471). This new evidence was offered on June 30, 2006, **after** the ALJ's May 16, 2006 decision denying Plaintiff's disability claims (Tr. 16). The Court only reviews evidence that was available to the Commissioner. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Wyatt v. Sec'y of Health and Human Svcs.*, 974 F.2d 680, 685 (6th Cir. 1992). Nevertheless, on appeal, the Court may remand the case back to the ALJ for further proceedings where the party shows that the new evidence is material, and good cause is shown for failure to incorporate the evidence in the hearing. *Id.*; 42 U.S.C. § 405(g). Dr. Barker's June 30, 2006 examination showed that Plaintiff's condition had deteriorated to the point where he could only do sedentary work (Tr. 469). However, "evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt*, 974 F.2d at 685. Further, nothing in Dr. Barker's opinion specifically relates back to June-December 2001, the date last insured. Therefore, this new evidence is immaterial.

### 5. Adjustment to Other Work

Although the inquiry could have concluded at Step Four because Plaintiff did not meet his burden there, *see* 20 C.F.R. § 404.1520(a)(4)(iv), the ALJ nevertheless reached the fifth and final step in the sequential analysis. Here, the ALJ found that jobs existed in significant numbers in the national economy which Plaintiff could have performed (Tr. 25). The Commissioner bore the limited burden of providing evidence showing that Plaintiff can perform at other jobs which exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1512(g) & 404.1560(c). A vocational expert testified that an individual, limited to light work, with Plaintiff's age, education, work experience, and residual functioning capacity could perform certain jobs, including school bus monitor, blending tank

13

tender helper, and mill stencil worker (Tr. 26 & 516). This testimony was sufficient to meet the Commissioner's burden and support the ALJ's conclusion.

## CONCLUSION

For the foregoing reasons, the conclusion of the Magistrate's Report and Recommendation (Doc. No. 17) is adopted.

IT IS SO ORDERED.

> s/ *Jack Zouhary*
> JACK ZOUHARY
> U. S. DISTRICT JUDGE

March 26, 2008